**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:18-CV-61984-MORENO/SELTZER

**POLLY BASSETT**,

      **Plaintiff,**

**v.**

**WAL-MART STORES EAST, L.P.**,

      **Defendant.**

**PLAINTIFF'S AMENDED RESPONSE TO WAL-MART STORES EAST, L.P.,'S**
**MOTION FOR SUMMARY JUDGMENT ON MEDICAL CAUSATION**

Plaintiff, POLLY BASSETT, by and through undersigned counsel, files this Response to

Defendant's Motion For Summary Judgment on Medical Causation, and states as follows:

**STATEMENT OF DISPUTED FACTS AND STATEMENT OF ADDITIONAL**
**MATERIAL FACTS IN OPPOSITION TO MOVANT'S MOTINO FOR SUMMARY**
**JUDGMENT ON MEDICAL CAUSATION**

1.      Paragraph 1: Undisputed

2.      Paragraph 2: Undisputed

3.      Paragraph 3: Undisputed

4.      Paragraph 4: Undisputed

5.      Paragraph 5: Disputed. Plaintiff does not dispute that Plaintiff's Expert Disclosure

identifies two treating physicians Dr. Andrew S. Ellowitz and Dr. Barry Goldsmith as hybrid

witnesses.  However, Plaintiff disputes that Plaintiff alleges the hybrid witnesses do not need to

provide a Rule 26(a)(2)(C) report and instead allege that Dr. Ellowitz and Dr. Goldsmith do not

need to provide a Rule 26(a)(2)(B) report.  Plaintiff further disputes that she is attempting to

backdoor expert testimony through her treating physicians to establish causation, prognosis, and future care, but instead has been clear about Plaintiff's intentions early in this case.

6.      Paragraph 6: Disputed only to the extent that the "main issue" is whether Plaintiff's injuries to her neck, back, and right knee are the same injuries from a previous car accident and a subsequent car accident because Plaintiff's injuries for which she seeks relief are not a result of any other incident other than the slip and fall at Walmart on December 24, 2016 and because paragraph 1 above is undisputed that Plaintiff injured her right knee, back, right shoulder, right elbow, right hip, right leg, and pain and suffering, as a result of the slip and fall at WALMART.  [D.E. 3 ¶ 27].

7.      Paragraph 7: Disputed.  The medical records cited by the Defendant do not establish chronic right knee pain, only chronic left knee pain and no right knee injuries. It is further disputed that, the injury to her right knee was a longstanding chronic condition, even if Plaintiff had some right knee pain prior to the slip and fall on December 24, 2016.

8.      Paragraph 8: Disputed. The record cited by the Defendant states that for the right knee the Impression included "no evidence of acute injury".  [D.E. 64-6].

9.      Paragraph 9: Disputed. It is undisputed that Plaintiff previously had neck, shoulder, and lower back pain before and after the incident at Walmart on December 24, 2016 but it is disputed as to the cause of the injuries as it relates to this incident. [D.E. 64-8 p. 1] ("INTAKE COMPLAINTS . . . complained of neck pain, right elbow pain, anterior costal pain, upper, mid, and lower back pain, pain and right knee pain.")

10.     Paragraph 10: Undisputed, however, it is important to note that Dr. Goldsmith corrected his medical records because of two scriveners errors such that Plaintiff's past history related to her left knee, not her right knee; and the cause of the injuries in this case is a slip and fall

(not a motor vehicle accident which was highlighted by the Defendant.)  *Compare* [D.E. 64-8 p. 1 and 4] *with* [D.E. 64-9 p. 1].

11.     Paragraph 11: Undisputed.

12.     Paragraph 12: Disputed.  The medical records show that Dr. Ellowitz and Dr. Goldsmith needed to determine the cause of Plaintiff's injurie to render treatment because for example "[c]are of knee pain depends on the underlying cause" and ". . . treatment depends on the cause."  Exhibit 1, p. 2.  There is also evidence that the injuries were readily observable at the scene of the slip and fall.  Exhibit 3 pp.1-14 (CCTV footage showing Plaintiff twist her right knee and further clutching her knee as she bounces the right knee up and down for a period of time).

13.     Paragraph 13: Undisputed.

14.     Paragraph 14: Undisputed, however, this injury was readily observable and therefore, expert testimony regarding causation may not be required.  *Id.*

15.     Plaintiff's treating physician, Dr. Ellowitz, opined long before undersigned counsel was retained and before a lawsuit was filed, on June 28, 2018 that Dr. Ellowitz "counseled the patient regarding the following:" (1) "Knee Pain Care: Care of knee pain depends on the underlying cause;" (2) "The natural history and treatment of knee pain depends on the cause;" (3) "A variety of conditions can lead to knee pain such as arthritis, bursitis, meniscal tear, and fracture;" (4) The location of pain may give a clue regarding the underlying cause;" and (5) "The patients lumbar and right knee condition are causally related to her 12/16 fall at Walmart." Exhibit 1, p.2 (Impressions Section); *Id.* at p. 3 (Additional Notes Section; *see also* [D.E. 1-2 p. 15] (for date lawsuit initiated); *see also* [D.E. 68-3 pp. 50 and 51] (Impressions Section and Additional Notes Section).

16.     Plaintiff's treating physician, Dr. Goldsmith opined that (1) Plaintiff "presented herself to this office for consultation and evaluation in relations to injuries that stated were sustained as a result of a slip and fall incident which occurred on 12-24-16;" and (2) "[t]he finding of the MRI studies along with the patient examination findings and complaints are consistent with the type of trauma incurred in the patients description of the incident and a causal relationship to trauma and the resultant complaints would be assumed as reasonable.   Exhibit 2, p. 1 and 5 (Review of History Section; Discharge Conclusion section).

## MEMORANDUM OF LAW

**I.     Plaintiff has Complied with Rule 26(a)(2)(C) Regarding Hybrid Witnesses/Treating Physicians, Which Includes Treating Physician Opinions on Medical Causation and Therefore Defendant's Motion for Summary Judgment On Medical Causation Must Be Denied**

Defendant WAL-MART STORES EAST, L.P. seeks to exclude testimony of causation of Plaintiff's injury that was disclosed in compliance with the Federal Rules of Civil Procedure as an *improper* means of obtaining Summary Judgment on Medical Causation.   Plaintiff contends that treating physicians—in this case Dr. Andrew S. Ellowitz, M.D. and Dr. Barry Goldsmith, D.C.—that were not specially retained to offer expert opinion testimony is within the exception to compliance with Federal Rule 26(a)(2)(B), and therefore Summary Judgment on Medical Causation must be denied.

Like the other provisions of Rule 26, the expert requirement turns on the substance of the testimony of the witness, not the status or categorization of the witness. *Singletary v. Stops, Inc.,* 2010 WL 3517039, at *6 (M.D. Fla. Sept. 7, 2010) (citing *Brown v. Best Foods,* 169 F.R.D. 385, 388 (N.D. Ala. 1996)) ("The plaintiff can []not avoid the requirements of Rule 26 by simply indicating that [her] experts are plaintiff's treating physicians .... Rule 26 focuses not on the status of the

witness, but rather the substance of the testimony." (quoting *Bucher v. Gainey Transp. Serv. Of Ind.,* 167 F.R.D. 387, 389 (M.D. Pa. 1996)).

However, a treating physician does not need to submit an expert report if planned testimony was acquired "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." (citing *Baratta v. City of Largo,* No. 8: 01-CV-1894-T-EAJ, .2003 WL 25686843, at 2-3 (M.D. Fla. Mar. 18, 2003) (quoting Fed.R.Civ.P. Rule 26 advisory committee's note, 1993 amendment)). Thus, a physician designated as a hybrid expert witness may give expert testimony without an expert report on matters "based on the examination and treatment of the patient." *Id.* at 2 (citing *Shapardon v. West Beach Estates,* 172 F.R.D. 415, 416 (D. Haw. 1997)).

The case of *Torres v. First Transit, Inc.*, 17-cv-81162, 2018 WL 3729553 (S.D. Fla. Aug. 6, 2018), is nearly identical to this case.  In *Torres,* the court noted that the "Defendant's [] argument that the physicians' causation testimony should be limited at this juncture falls flat."  *Id.* at *3. Furthermore, in *Torres,* the Defendant did not seek to depose any of Plaintiffs' treating physicians identified in the Expert Witness Disclosures.  *Id* at *2.  "Three weeks after the close of discovery [in that case], Defendant filed the Motion to Strike currently before the Court."  *Id.*  "Further, Defendant argues that the failure to provide the written expert report is prejudicial in that opinions on causation, future treatment and medical costs come as a 'surprise' to Defendant, it is 'impossible' to cure the prejudice because the discovery deadline has expired, belated production of expert reports would disrupt the trial, and Plaintiffs have no good reason for their failure to produce the reports." *Id*.  When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report." *Id.* (*quoting*

*In re Denture Cream Products Liability Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012)) (internal citations and quotations omitted).

"In determining whether the failure to disclose is substantially justified or harmless, the Court considers four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.*; *see also Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010) (quoting *Warner v. Ventures Health Care of Gainesville, Inc.*, 2001 WL 36098008, at *1 (M.D. Fla. Aug. 1, 2011) (internal citations and quotations omitted).

In *Herrera v. Wal-Mart Stores East*, *L.P.* as well as *Jones v. Royal Caribbean Cruises*, *Ltd.* and *Kondragunta v. Ace Doran Hauling & Rigging Co*. - all cases in which the plaintiffs failed to adequately comply with the disclosure requirements set forth in Rule 26(a) for treating physicians. *See Herrera v. Wal-Mart Stores East*, *L.P*, No. 17-cv-600087-BLOOM/Valle, ECF No. [27] (S.D. Fla. May 15, 2017) (denying motion to strike experts when the defendant waited to raise the sufficiency of the disclosures for the plaintiffs' treating physicians until after the close of discovery); *Jones v. Royal Caribbean Cruises*, *Ltd*., No. 12-20322-CIV, 2013 WL 8695361, at *4-5 (S.D. Fla. Apr. 4, 2013); *Kondragunta v. Ace Doran Hauling & Rigging Co*., 1:11-CV-01094-JEC, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013) (declining to strike treating physicians for failure to produce an expert witness report and instead allowing the non-compliant party an opportunity to provide a compliant report after which the moving party could then depose the witness).

Like the defendants in *Torres*, *Jones*, *Herrera and Kondragunta*, the Defendant in this case—WALMART—had the opportunity to seek the intervention of the Court for Plaintiffs' purported non-compliance before the discovery cut-off but failed to do so.

The same is true here. Defendant does not claim that it did not know of the identities of Plaintiffs' two treating physicians, but instead attempts to exploit a technicality.  A technicality that does not fall in the Defendant's favor under federal law.  Plaintiff timely served her Expert Witness Disclosures within hours of the Defendant WALMART serving theirs on March 12, 2019, and Defendant did not seek relief from the Court until after the discovery deadline expired – more than two weeks later. Defendant's attempt to preclude Plaintiff from presenting testimony crucial to their claim on a technicality must fail. *See Torres*, 2018 WL 3729553 at *3; *see also Jones*, 2013 WL 8695361 at *4. Here, the potential prejudice to Plaintiffs of striking their experts far outweighs any prejudice to Defendant, especially when Defendant neglected to involve the Court sooner. *Torres*, 2018 WL 3729553 at *3.

In yet another case, *Levine v. Wyeth, Inc.,* the Court noted "where a doctor's opinion extends beyond the facts disclosed during care and treatment of the patient and the doctor is specially retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B)." *See also Levin v. Wyeth, Inc.*, 2010 WL 2612579 (M. D. Fla. Jun 25, 2010).

A party must present a report for any expert witness that is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ. P. 26(a)(2)(B). The advisory committee for the 1993 amendment of Rule 26 explained in its notes that: "The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case ... **A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.**'' *See also Lipford v. Centerline, Inc.*, 2010 WL 1462234 (N.D. Fla. Apr. 13, 2010) (quoting the Advisory Committee for the 1993 Amendment to Rule 26) (emphasis added).

Courts have continued to follow the advisory committee's lead in ruling that a treating physician, testifying as to his consultation with or treatment of a patient, is not subject to the written report requirements of Rule 26. *See, e.g., Levine v. Wyeth, Inc.,* No. 8: 01-cv-854-T-33AEP, 2010 WL 2612579, at *1 (M.D. Fla. June 25, 2010) (''[B]ecause a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient."); *Baratta v. City of Largo,* No. 8:01-CV-1894-T-EAJ, 2003 WL 25686843, at *2 (M. D. Fla. March 18, 2003) (treating physician not required to provide a written report if his opinions are acquired through examination or treatment of patient rather than from information gathered outside the course of examination or treatment). See *also Smith v. Jacobs Engineering Group, Inc.,* 2008 WL 2781149, at *2 (N.D. Fla. April 18, 2008) ("While Rule 26 (a)(2)(B) focuses on experts who must file an expert report, by exclusion it contemplates that some experts may testify without filing reports. **A treating physician is the quintessential example of an expert witness for whom no Rule 26(a) (2) (B) expert report is required.**"); *Vaughn v. United States,* 542 F. Supp. 2d 1331, 1336-37 (S.D. Ga. 2008) (emphasis added) (ruling plaintiff was not required to provide expert report from treating physician); *Bengston v. Bazemore,* 2007 WL 3307204, at *2 (M.D. Ala. Nov. 6, 2007) (refusing to strike the affidavit of a treating physician who opined about the cause of the plaintiff's injury but did not provide an expert report); *Martin v. CSX Transp., Inc.,* 215 F.R.D. 554 (S. D. Ind. 2003) (permitting treating physician's opinions regarding causation and prognosis without written Rule 26 report); *McCloughan v. City of Springfield,* 208 F.R.D. 236, 242 (C.D. Ill. 2002) (treating physicians may offer opinion testimony on causation, diagnosis, and prognosis without the prerequisite of providing a Rule 26 (a)(2)(B) report); *Sharpardon v. West Beach Estates,* 172 F.R.D. 415, 416-17 (D. Haw. 1997) (recognizing that opinions *as* to matters such as the diagnosis, prognosis and the extent of

disability, if any, caused by the condition or injury "are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."); *Piper v. Harnischfeger,* 170 F.R.D. 173, 175 (D. Nev. 1997) ("It is common place for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis, the prognosis and the extent of disability caused by the condition, if any. Opinions such as these are a part of the ordinary care of the patient and do not subject the treating physician to the extensive reporting requirements of Fed. R. Civ. P. 26(a) (2) (B)."); *Salas v. United States,* 165 F.R.D. 31, 33 (W. D. N. Y. 1995) (holding that five doctors called to testify regarding their treatment and "opinion[s] with respect to the injuries or illnesses sustained as they causally relate to this incident and his/her opinion as to permanency" were not subject to the more extensive expert-witness requirements of Rule 26 (a)(2)(B)).

In *Carideo v. Whet Travel, Inc., et. al.*, 16-23658 (S.D. Florida, March 16, 2018), Carnival argued "that all treating physicians and other professional witnesses are prohibited from offering opinions on liability, causation of Plaintiff's damages and other inappropriate opinions because they have not submitted expert reports . . . and because the opinions were not formed and are not based upon observations made during the course of their treatment." (internal quotations omitted). The Court went on to find that "doctors could potentially be authorized to provide opinions at trial on causation if they needed to know what caused Mr. Carideo's injuries to treat him." Yet further, because the Plaintiff in that case—unlike this case—didn't comply with Rule 26 (a)(2)(C)(ii), they then found that "[b]ecause the parties have not taken the depositions of the doctors and have not explained the nuances of the doctors' medical treatment of Mr. Carideo, the Court is not in a position to issue a final ruling until trial."

In *Fielden v. CSX Transportation, Inc.,* 482 F. 3d 866 (U.S.Ct.Appls.6th 2007), the Court noted that there was no evidence that the treating physician, Dr. Fischer, based his causation opinion on any source other than his treatment of Fielden's injury. Therefore, compliance with Rule 26(a)(2)(B) by the plain meaning of the language of the rule, was not required. *Id.*

Unlike the Plaintiff in *Carideo*, Plaintiff POLLY BASSETT made substantial Rule 26(a)(2)(C)(ii) disclosures that included opinions from both Dr. Ellowitz and Dr. Goldsmith regarding their need to determine causation to treat and counsel the Plaintiff. *See* Plaintiff's Rule 26(a)(2)(C) Disclosure, [D.E. 64-3].  Notably, Dr. Goldsmith treated POLLY BASSETT's left knee from an earlier car crash and not her right knee.  [D.E. 64-7 p. 9] (". . . initial diagnosis of . . . left knee with myalgia . . . ."); [D.E. 64-8 p. 1] ("Past History . . . right knee study . . . ."); [D.E. 64-9] ("Right knee should be corrected to read Left Knee.").  Thus, Dr. Goldsmith's observations—not just following the crash, but before the crash—is permissible for Dr. Goldsmith to testify as a hybrid treating physician, and puts him in a particularly good position regarding Polly Bassett's knees—as a Rule 26(a)(2)(C) hybrid treating physician regarding causation.

Importantly, Dr. Ellowitz's and Dr. Goldsmith's opinion as to causation could only be based upon their treatment because they were not requested, and did not review any other materials but their own medical records of their treatment of Plaintiff POLLY BASSETT. Therefore, according to the holding of the *Torres*, *Jones, Fielden* and *Carideo* cases, compliance with Rule 26(a)(2)(B) in providing a written report from Dr. Ellowitz and Dr. Goldsmith is not required.

Moreover, in the case at bar, Plaintiff's counsel has long advised that Dr. Goldsmith and Dr. Ellowitz were health care providers in this case starting with the initial disclosure of information.  In addition, Plaintiff produced medical records at least as early as December 21, 2018 whereby Dr. Ellowitz noted that "[t]he patient's lumbar and right knee condition are causally related to her 12/16

fall at Walmart.  Based on the AMA guidelines and the patient's clinical condition she has sustained a 10% permanent impairment to her body as a whole due to the injuries of the lumbar spine (5%) and right knee (5%).  *See* Exhibit 1.  Dr. Ellowitz further notes that "[t]he location of the pain may give a clue regarding the underlying cause.  *Id.*  Yet further, Dr. Ellowitz notes that the care of knee pain depends on the underlying cause.  *Id.*  This makes clear that the cause of the injury at Walmart was made and observed in the course of treatment of POLLY BASSETT and that the care itself depended on the cause of the injury.  *Id.*  Dr. Ellowitz counseled Plaintiff POLLY BASSETT on the cause, as well as treatment options related to said cause of the knee injury.  *Id.*

Yet Further, on February 28, 2019, Plaintiff specifically advised that "Plaintiff has not retained any experts and **expects to only call hybrid witnesses**. Therefore, Plaintiff does not have information responsive to this request."  [D.E. 64-2] (emphasis added).  Plaintiff further responded to the request regarding other cases in which "the expert" has testified in the last four years, for which Plaintiff responded that "**Dr. Ellowitz** has never testified or been deposed by or for a client of Tucker Law, to the best of the knowledge of the undersigned law firm," which leaves no doubt as to the intent to call Dr. Ellowitz a hybrid treating physician.  [D.E. 64-2] (emphasis added).  Quoting *Torres* for this case, "it is hard to fathom that the identities of these treating physicians or their medical opinions came as a surprise when Plaintiffs disclosed their identities in their initial disclosures in [September of 2018] and in their Answers to Interrogatories in [February 2019], produced their medical records in [September of 2019] and [December 21, 2018 and on March 14, 2019], and then provided detailed disclosures for these doctors pursuant to Rule (a)(2)(C)."  *Torres*, 2018 WL 3729553 at n.2.

Thus, the Defendant in the case at bar has been on notice of the opinions of Dr. Ellowitz and Dr. Goldsmith regarding anticipated testimony regarding treatment and causation for a substantial

period of time.  The doctor's medical notes clearly evidence that they made opinions regarding causation of the injuries in this case during the course of treatment and used said causation opinions for purposes of, *inter alia*, counseling and treatment of POLLY BASSETT.

Yet further, Plaintiffs' counsel sincerely did not anticipate the Court may consider compliance required with Federal Rule 26 (a)(2)(B) for Dr. Ellowitz's and Dr. Goldsmith's opinion testimony based upon the current interpretations of the rule as previously cited in this memorandum as recently as late 2018. The submission of initial disclosures, medical records clearly noting causation due to the slip and fall at Walmart, response to expert interrogatories (specifically mentioning Dr. Ellowitz) and the timely filing of the Rule 26(a)(2)(C) was intended to serve as full disclosure of all discoverable information from Plaintiff's treating physicians.  The Defendant's failure to take the deposition of Dr. Ellowitz or Dr. Goldsmith—the two main doctors in this case— while taking three depositions from treating physicians that occurred ***prior*** to the slip and fall of POLLY BASSETT should go against Defendant's Motion for Summary Judgment of Medical Causation.  The Defendant intentionally failed to depose Dr. Ellowitz and Dr. Goldsmith when viewed in light of the fact that WALMART deposed doctors tried to elicit testimony of a pre-existing injury while not deposing doctors that treated POLLY BASSETT in this case.

Plaintiffs contends that the Court apply the Rule 26 amendment effective December 1, 2010, to the disclosure of Dr. Ellowitz's and Dr. Goldsmith's opinion testimony that Plaintiff provided within the time period prescribed by the rules, and further find that Dr. Ellowitz's and Dr. Goldsmith's expert testimony both as to subject matter and as to a summary of facts and opinions about which were disclosed to have complied with Federal Rule 26(a)(2)(C). The order adopting the Federal rule amendment states the rule change may be applied to pending actions when "just and practicable."

Further, Plaintiff also respectfully requests the court to adopt the approach taken in *Meyers v. National Railroad Passenger Corporation (AMTRAK), (7th Circuit, 2010).* In *Meyers,* the Court stated, "Meyers presents no evidence, and we find none in the record, suggesting either doctor previously considered *or* determined the cause of Meyers' s injuries during the course of treatment." Oppositely, Dr. Ellowitz's and Dr. Goldsmith's medical records in evidence establish that Dr. Ellowitz and Dr. Goldsmith previously considered or determined the cause of POLLY BASSETT's injuries during the course of Dr. Ellowitz's and Dr. Goldsmith's treatment of POLLY BASSETT. Under the holding in *Meyers,* any opinions as to cause of the injury reached during treatment should be admissible.

## II.   The Southern District of Florida Has Held That Where Compliance With Rule 26(a)(2)(C) Did Not Occur, Causation Testimony Was Still Allowed

Yet further, under *Carideo*, just over a year ago in the Southern District of Florida, the Court found that the Plaintiff didn't comply with Rule 26(a)(2)(C) and *still* allowed causation testimony from the treating physicians if their opinions pertained to the treatment or whether their opinions were needed to explain their decision-making process to the jury.   Notably however, POLLY BASSETT has complied with Rule 26(a)(2)(C).   Therefore the court should not be so limited (although the disclosure [D.E. 64-3] discusses these very opinions as to causation).

The *Meyers* court pointed out in footnote 3 of its opinion the Court's power to require a report from Plaintiff of Dr. Montoya's opinions if the government was in doubt about Dr. Montoya's opinions regarding causation.

Plaintiff in that case also requested the Court to adopt the resolution of the issues that have been raised by the U.S. government's objection rendered May 3, 2011, by following the holding in Ninth Circuit Court of Appeals decision in *Goodman v. Staples The Office Superstore, LLC,* No. 10-15021, D.C. No. 2:08-cv-00445-JAT. The *Goodman* court held that when a treating physician

morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony should comply with Rule 26 (a)(2). However, because the law regarding these hybrid experts was not settled, and because treating physicians are usually exempt from Rule 26(a)(2) requirements, the *Goodman* court exercised its judicial discretion to apply this clarification prospectively. The Plaintiffs in the case at bar would request such discretion be applied prospectively as well by this Court.

A treating physician may testify without a written expert report "if planned testimony was acquired not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." *Baratta v. City of Largo,* No. 8:01-Cl894-T-EAJ, 2003 WL 25686843, at *2 (M.D.Fla. Mar. 18, 2003) ( internal citation and quotation marks omitted) "Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient." As explained by the district court district court in *Baratta:*

> [Tl]he relevant question is whether the treating physician acquired his opinions as to the cause of injuries directly through treatment. If so, the treating physician need not file a written report. If the treating physician testified on information gathered outside of the course of treatment and the party does not file a Rule 26 (a) (2) (B) report as to that testimony, it may be excluded.

*Id.* Thus, only when the nature and scope of the treating physician's testimony extends beyond the facts disclosed or opinions formed as a part of the treatment, Rule 26(a)(2)(B) requires an expert report from the treating physician. As the medical records indicated—and as were provided in the Rule 26(a)(2)(C) disclosure—POLLY BASSETT has produced evidence that the Doctor's opinions as to causation was acquired directly through treatment.

Plaintiffs also contend if a written report was required and if compliance is not found by the Court, the Court should overrule the objections under its Rule 37 discretion. "The district court has broad discretion in deciding whether a failure to disclose evidence is substantially justified under Rule 37(c)(1)." *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.,* No. 8:06-CV-40-T-33MAP, 2009 WL 92826, at 3 (M.D.Fla. Jan. 14, 2009).

### III.    Any Non-Compliance is Harmless Error

In determining whether the failure to sufficiently disclose an expert witness is substantially justified or harmless, courts are guided by, inter alia, the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* (quoting *Two Men* & *A Truck Int'l Inc. v. Residential* & *Commercial Transp.* Co., *LLC,* Case No. 4: 08-CV-67-WS/WCS, 2008 WL 5235115, at 2 (N. D. Fla. Oct 20, 2008)). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D.Ga. 2006) (citations omitted) (emphasis added).

"Failure to disclose is 'harmless' where there is no substantial prejudice to the party entitled to receive the disclosure." *Poole v.* Gee, 8: 07-CV-912-EAJ, 2008 WL 2397603, at *2 (M.D. Fla. June 10, 2008). The purpose of the "harmless" provision is "to avoid unduly harsh penalties in a variety of situations." Fed. R. Civ. P. 37 advisory committee notes.  Plaintiffs submit that these factors establish that any failure to timely disclose the opinions of causation by Dr. Ellowitz and Dr. Goldsmith were harmless. Defendant WALMART was reasonably apprised that Dr. Ellowitz and Dr. Goldsmith would opine on the issues of permanency and causation by the disclosure of the initial

disclosures [DE 64-3], response to expert requests to produce [DE 64-3], and disclosure of medical records (*See e.g.* Ex. 1 and Exhibit 2 (produced at least as early as Oct. 26, 2018 and Dec. 21, 2018)).

These are issues on which treating physicians routinely and customarily opine when their patients are in litigation. Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. *Torres*, 2018 WL 3729553 at *3; *see also Sharpardon v. West Beach Estates,* 172 F.R.D. 415, 416-17 (D. Haw. 1997) (stating that "[o]pinions as to th[o]se matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a) (2) (B) ."); see *also Piper v. Harnischfeger,* 170 F.R.D. 173, 175 (D. Nev. 1997) (finding no expert report required for opinions on matter such as causation, future treatment, extent of disability, and the like); *Levine v. Wyeth, Inc.,* 2010 WL 2612579 (M. D. Fla.) at *1. Accord *Clair v. Perry,* 2010 WL 519952 (Fla. 4th DCA Feb. 16, 2011).

If Dr. Ellowitz's and Dr. Goldsmith's opinions as to causation were excluded, Plaintiff POLLY BASSETT would be severely prejudiced in satisfying her burden to recover the full measure of his non-economic damages. *See Clair* v. *Perry,* 2010 WL 519952 (Fla. 4th DCA Feb. 16, 2011) (recognizing that treating physician offering testimony on permanency of plaintiff's injury was a "critical witness" and that plaintiff "would be substantially prejudiced in her ability to present her case" if the physician were not allowed to render opinion on permanency). In the interest of equity and justice, Plaintiff should be afforded an opportunity to have her case heard on the merits.

The fifth and final factor to guide the court in its analysis of whether the untimely disclosure was harmless is the non-disclosing party's explanation for its failure to disclose the

witness. *See Bane,* 2009 WL 92826, at *3. As discussed above, Dr. Ellowitz and Dr. Goldsmith have been identified as a treating physician with relevant knowledge since the beginning of this case. They were identified in Plaintiffs' initial disclosures, in Plaintiffs' answers to interrogatories, and at Ms. Bassett's deposition long before the close of discovery.  *See, e.g., Bane,* 2009 WL 92826, at *5 (denying motion to strike exhibits where failure to timely produce certain exhibits was, *inter alia,* "nothing more than an innocent mistake."). *See also* Fed. R. Civ. P. 37 Advisory Committee Notes to 1993 amendments (stating that the "harmless violation" provision was "needed to avoid unduly harsh penalties in a variety of situations: *e.g.,* the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties .... "). Plaintiffs submit that the pertinent factors weigh heavily in favor of a conclusion that the failure to submit a Rule 26 report, if deemed required, was harmless.

## IV.    <u>Extension of Time Requested If Necessary to Prevent Severe Prejudice</u>

Considering the Court recently continued the two-week trial period four months from June 10, 2019 to October 15, 2019 [D.E. 62], and also extended non-expert discovery period only approximately one month to March 15, 2019, while not extending expert discovery at all, leads to a conclusion that no prejudice would result from extending the expert discovery period. [D.E. 62].   Plaintiff therefore requests an additional two months time to exchange expert discovery, and to re-open fact discovery for one month to the extent that the Court would exclude Dr. Ellowitz's and Dr. Goldsmith's opinions at trial as to causation and for purposes of Defendant's Motion for Summary Judgment on Medical Causation [D.E. 64].  In so doing, the Plaintiff would cooperate with coordinating the depositions of the treating physicians if the Defendant so chooses.  Any prejudice could further be cured without changing the trial period.

Plaintiffs' counsel maintains that this is a reasonable solution to any claimed prejudice of the Defendant because of the unsettled issues regarding Rule 26(a)(2)(B) and considering that the subject case is not scheduled be trial before the Court until mid-October, over six months away.  This request would not prejudice the Defendant and the trial period would not need to be altered further.

### IV. Daubert is a Separate Inquiry Governed

"A treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an *opinion* unrelated to treatment which is "based on scientific, technical, or other specialized knowledge," that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert. Wilson v. Taser Int'l 303 Fed. Appx. 708, 712 (11th Cir. 2008)* (*Citing United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005); *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 688 (N.D.Ga. 2006).  In that case, the court further held that "Furthermore, although a doctor usually may primarily base his opinion as to the cause of a plaintiff's injuries on his history where the plaintiff "has sustained a common injury in a way that it commonly occurs," a compression fracture of the spine is not the type of injury which commonly occurs from a shock by a TASER.

In this case, Plaintiff's opinions are related to the treatment and thus, *Daubert* is inapplicable.  Yet further, Plaintiff has sustained common injuries in a slip and fall in a way that commonly occurs, and is not like a compression fracture of the spine from a taser shock.

### IV. Cases Cited by The Defendant

The Defendant has not presented any case law that would be applicable to the facts in this case and are distinguishable as follows, in that the cases cited by the Defendant either:

(1) are unrelated to causation opinions from hybrid treating physicians. *See* [D.E. 64 p. 6] (*Citing Rivera v. Royal Caribbean Cruises, Ltd.*, 711 Fed. Appx. 952 (11th Cir. 2017) (dismissing the case because the Plaintiff had no expert ***whatsoever*** to establish a nonobvious injury; oppositely in this case, Plaintiff fell, twisted her knee on video and can be seen clutching her right knee with her right hand following the fall, while wiggling her right leg up-and-down at the same time, while still on the ground making it an obvious knee injury to everyone around her (*See* Exhibit 3).)); or

(2) are related to hybrid treating physicians and support the Plaintiff's position. *See* [D.E. 64 p. 6] (*citing Jones v. Disc. Auto Parts* no. 16-cv-138-Orl-37KRS, 2017 WL 1396477, at * 9 (M.D. Fla. April 19, 2017) (holding that "Plaintiff's Treating Physicians were not required to produce any expert reports"); or

(3) were reversed because questions of pre-existing injuries were a question for the fact finder as to causation. *See* [D.E. 64 p. 16] (*citing Cooper v. Marten Transp., Ltd*. 539 Fed.Appx. 963, 967-68 (11th Cir. 2013) (reversing because questions "of proximate cause is usually reserved for the jury and can be decided on summary judgment only in plain and indisputable cases); or

(4) relate to alleged injuries that accrued slowly requiring more reliability and were not immediately obvious—unlike, *e.g.*, a back and/or knee injury. *See* [D.E. 64 p. 17] (*citing In re Denture Cream Products Liability Litigation*, No. 09-2051-Altonaga, 2012 U.S. Dist. LEXIS 152277 at *33 (S.D. Fla. Oct. 22, 2012)) (finding that Plaintiff's causation experts uniformly testified that they did not know the background risk of copper-deficiency myelopathy causing a serious methodological deficiency; and holding that Plaintiff's superficial "hypothesis that prolonged use of very large amounts of Fixodent may cause copper-deficiency" did not establish

causation); *see* [D.E. 64 p. 11 (citing *Jacob v. Korean Air Lines Co., Ltd.*, 606 Fed. Appx. 478 (11th Cir. 2015) (whereby Defendant's own admission the plaintiff in that case suffered a "long sustained long-term diabetic and cardiac injuries as a result of airline travel;" or

(5) outright advise that *Daubert* analysis does not apply to treating physicians who acquires his opinions during the course of treatment. [D.E. 64 p.6 (citing Jones v. Disc. Auto Parts, LLC, no. 16-cv-138-Orl-37KRS, 2017 WL 1396477, at n.12 (M.D. Fla. April 19, 2017) (noting that "[t]here is [] authority for the proposition that a treating physician who acquires his opinions during the course of treatment is not subject to the *Daubert* analysis. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008) (suggesting that it is not until a treating physician expresses an opinion *unrelated* to treatment and based on scientific, technical, or other specialized knowledge, that a witness offers expert testimony for which the Court must perform its essential gatekeeping function as required by *Daubert*)) (further holding that "[a] medical degree does not authorize Dr. Meier to testify when he does not base his methods on valid science" because the plaintiff had not "sustained a common injury in a way that it commonly occurs, a compression fracture of the spine is not the type of injury which commonly occurs from a shock by a TASER) (internal quotations omitted).

## <u>CONCLUSION</u>

The Court has the power to resolve the objections to Dr. Ellowitz's and Dr. Goldsmith's opinion testimony in a manner which preserves the rights of both parties to try the case on its merits.   Plaintiffs request the Court to rule consistent with the use of the Court's judicial discretion and thereby Deny Defendant's Motion for Summary Judgment on Medical Causation.

**WHEREFORE**, Plaintiff requests an Order denying Defendant's Motion for Summary Judgment on Medical Causation, and granting any other relief this court deems just and proper.

Respectfully submitted,

Dated: April 20, 2019

By: s/Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No. 90047
Tucker Law®
200 SE 6TH Street, Suite 405
Fort Lauderdale, FL 33301
Telephone: (954) 204-0444
Facsimile: (954) 358-4946
Matt@TuckerUp.com
*Attorney for Plaintiff(s)*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: s/Matthew Sean Tucker